UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBYN HENRY,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendants.

_____/

Case No. 14-12004

Paul D. Borman
United States District Judge

FILED
JUN 0 5 2015
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING PLAINTIFF'S COMPLAINT WITHOUT PREJUDICE

Before the Court is Defendant State Farm Fire and Casualty Company's ("State Farm") Motion for Summary Judgment. (ECF No. 8.) Plaintiff filed a Response (ECF No. 11) and State Farm filed a Reply (ECF No. 12). The Court held a hearing on May 27, 2015. For the reasons that follow, the Court GRANTS the motion for summary judgment and DISMISSES Plaintiff's Complaint WITHOUT PREJUDICE.

**INTRODUCTION**

This case involves an insurance coverage dispute. Plaintiff claims that Defendant State Farm Fire and Casualty Company ("State Farm") wrongfully denied benefits under a policy that insured her home located at 2116 N. Center Rd., Burton, Michigan, 48509 ("the Property"), after the home sustained a total fire loss and a subsequent related theft of personal property. State Farm maintains that its investigation of the claim disclosed that the fire had been intentionally set and that there was scant evidence of personal belongings in the home after the fire to support Plaintiffs' $159,000

1

personal property loss claim. A subsequent theft from a shed on the Property was denied because the Policy had been declared void as of that date as a result of Plaintiff's conduct relating to the fire claim. State Farm also denied the claim because Plaintiff failed to comply with the provision of the Policy requiring her to submit requested documentation regarding her financial condition before filing suit against State Farm. Therefore, State Farm denied the claim on two separate grounds: first, because its investigation established that Plaintiff was involved in causing the fire, and second, because Plaintiff failed to cooperate in the investigation prior to filing suit, as required under the terms of the Policy.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed this action in Genesee County Circuit Court on December 12, 2013. State Farm removed the case to this Court on May 20, 2014, after Plaintiff agreed to dismiss Defendant Michelle Osburn from the state court action. Without Ms. Osburn, a Michigan citizen, the case became removable to this Court. At the time of removal, State Farm had already filed motions for summary disposition in state court but those motions did not comply with this Court's requirements for the filing of motions and papers. Accordingly, the Court held a status conference on July 28, 2014, at which the parties expressed a mutual desire to engage in three more months of discovery, followed by renewed dispositive motion practice. On August 6, 2014, this Court entered a scheduling order memorializing these dates. (ECF No. 3, Scheduling Order.) The parties subsequently agreed to extend the Scheduling Order dates, setting February 10, 2015, as the dispositive motion cutoff date. (ECF No. 7, First Consent Order Extending Scheduling Order.) State Farm filed its motion for summary judgment on January 27, 2015, arguing that Plaintiff failed

to comply with the Duties of Loss provision of the Policy before filing suit and that therefore her suit must be dismissed. State Farm further argues that because her failure to comply was wilful, her claims should be dismissed with prejudice.

B.  **Factual Background**

On June 2, 2012, a fire occurred at Plaintiff's home, destroying the home and all of its contents. Compl. ¶ 7. Plaintiff informed State Farm of the loss and, according to Plaintiff's Complaint, Plaintiff was instructed by State Farm not to enter the property during the investigation. *Id.* ¶ 8. On August 29, 2012, after Plaintiff had reported the loss to State Farm, a theft occurred on the Property when items were stolen from a shed that was not destroyed by the June 2, 2012 fire. *Id.* ¶ 9.

After receiving the claim, State Farm retained private fire investigator Kevin Pike of Rehman Corporate Investigative Services to inspect Plaintiff's residence and determine the origin of the June 2, 2012 fire. (Def.'s Mot. Ex. C, April 4, 2014 Affidavit of Michelle Osburn ¶ 5; Def.'s Reply Ex. A, April 7, 2014 Affidavit of Kevin Pike ¶ 5.) Mr. Pike inspected the Property on June 7, 2012, and concluded that the fire had been intentionally set in multiple locations inside the residence, possibly with the use of accelerant. Pike Aff. ¶ 7. As part of his investigation, Mr. Pike spoke with Detective/Captain Don Schreiber of the Burton Police and Fire Department who advised Mr. Pike that Schreiber also had inspected the Property and similarly concluded that the fire was incendiary. *Id.* ¶ 9. Detective Schreiber responded to the scene of the fire on June 2, 2012 at approximately 4:00 a.m., and described the Property as "fully involved" at the time firefighters arrived, so that no firefighters entered the Property and the blaze was contained from outside the structure. (Def.'s Mot. Ex. B, Feb. 6, 2015 Deposition of Detective Donald G. Schreiber 8-9.) Detective Schreiber returned

3

to the Property later in the evening on June 2, 2012, to begin his investigation of the fire. *Id.* at 10. Detective Schreiber questioned the lack of furniture remains in the home. *Id.* at 10-11. He recalled that Plaintiff explained to him that she had taken some items out to a shed in the backyard before the fire due to a leak in the roof of the house. *Id.* at 10. Detective Schreiber viewed the contents of the shed and confirmed that several items were indeed stored there. *Id.* at 12. Detective Schreiber could determine no accidental cause for the fire and ultimately concluded that the fire had been intentionally set. *Id.* at 21.

After the investigators concluded that the fire had been intentionally set, the file was assigned to Ms. Osburn for investigation by State Farm's special investigations unit. Osburn Aff. ¶ 7-8. Ms. Osburn contacted Plaintiff on June 13, 2012, to inform her that arson was suspected and that Plaintiff was a person of interest as the last known individual in the home and because a neighbor had witnessed Plaintiff taking items out of the home the night before the fire. *Id.* ¶¶ 9-10; Def.'s Mot. Ex. H, Burton City Fire/Rescue Report dated 6/15/2012. On August 29, 2012, Plaintiff reported a second loss as a result of a claimed theft of items stored in the shed on her Property.

Following receipt of the results of the two fire investigations, State Farm invoked the examination under oath ("EUO") provisions of the policy of insurance to obtain Plaintiff's sworn testimony regarding the loss. *Id.* ¶ 10. As part of the EUO process, Plaintiff was asked to produce certain financial information to determine whether Plaintiff had a financial incentive to set the fire and file a claim. Plaintiff was also required to submit a sworn proof of loss with documentation supporting her claim of loss of items of personal property. *Id.* ¶¶ 11-12; Def.'s Mot. Ex. D, Feb. 14, 2013 correspondence requesting Plaintiff to appear for her EUO on March 6, 2013 and to produce no later than March 1, 2013, certain listed financial information and documentation. On March 26,

2013, the EUO was rescheduled and Plaintiff was informed that she had still failed to produce all of the information requested in the February 14, 2013 letter setting the initial date and time for her EUO. Def.'s Mot. Ex. D, March 26, 2013 correspondence.

Plaintiff's EUO took place on April 12, 2013. (Def.'s Mot. Ex. E, April 12, 2013 EUO of Robyn Henry.) Plaintiff testified that her tax returns were destroyed in the fire and she agreed to obtain copies of them and to produce them to State Farm. *Id.* at 18. She refused to give State Farm authorization to obtain her tax records because she was "not comfortable with [State Farm] having documentation that [she did not] have." *Id.* at 18-19, 22-23. Plaintiff's bank records also were destroyed in the fire. *Id.* at 25. Plaintiff testified that she obtained the State Farm policy in or around February, 2011. *Id.* at 45.

Plaintiff testified that she is a member of the Saginaw Chippewa Indian Tribe and that she receives $1,152.00 bi-weekly as a per diem from the Tribe. *Id.* at 5. Plaintiff was unemployed at the time of her EUO. She last worked in 2010 and her unemployment benefits from her previous job terminated some time in 2012. *Id.* at 15, 18. Plaintiff had previously filed for Chapter 7 bankruptcy in 2002 and received a discharge of her debts. *Id.* at 21.

At the close of her EUO, counsel for State Farm again informed Plaintiff that her documentation was incomplete and insufficient. *Id.* at 169-70. On April 16, 2013, State Farm followed up with a letter detailing the documents it still needed to obtain from Plaintiff to complete its investigation, including: 2010, 2011 and 2012 tax returns, bank statements, unemployment benefits statements, utility bills, credit card statements from January 1, 2012 to June, 2012, and documents substantiating the claimed items of personal property and their value. (Def.'s Mot. Ex. F, April 16, 2013 correspondence.) The April 16, 2013 letter stated that the documents should be

provided to State Farm on or before May 3, 2013, unless alternate arrangements for an extension of time were made. *Id.* Plaintiff did not submit the requested documents to State Farm and did not request more time to comply.

Because State Farm did not receive any of the records and documents they had requested in their April 16, 2013 letter, they rendered a decision based on the information that they had and denied the June 2, 2012 fire loss claim on August 6, 2013. Osburn Aff. ¶¶ 14-15. State Farm gave the following reasons for the denial of the claim:

> You are hereby notified the Company formally denies any and all liability to you under the policy for the following reasons:
>
> > This is not a covered loss by the policy, as it is not accidental direct physical loss.
> >
> > You intentionally caused or procured this loss for the purpose of obtaining insurance benefits which bars your claim and voids the policy effective June 2, 2012.
> >
> > You have intentionally misrepresented and concealed material facts and circumstances relating to this loss and you have committed fraud relating to this loss which bars your claim and voids the policy effective June 2, 2012.
> >
> > You did not comply with the duties under your policy requiring the assistance and cooperation in providing the company with records and documents.

Def.'s Mot. Ex. G, Aug. 6, 2013 correspondence to Robyn Henry.

> The letter set forth the applicable policy provisions related to the denial of the claim:
>
> Section I - Losses Insured - Coverage A - Dwelling
>
> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in SECTION I - LOSSES NOT INSURED

6

> Coverage B - Personal Property
>
> We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in SECTION I - LOSSES NOT INSURED
>
> Section I - Conditions
>
> 2. Your Duties After Loss. After a loss to which this insurance may apply, you shall see that the following duties are performed:
>
>> d. as often as we require:
>>
>>> (2) provide us with records and documents we request and permit us to make copies.
>
> 13. Intentional Acts. If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other insured for this loss.
>
> SECTION I AND SECTION II - CONDITIONS
>
> 2. Concealment or Fraud. This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

Def.'s Mot. Ex. G 3-4.

State Farm's denial letter clearly stated that one of the reasons for denial of the claim was Plaintiff's failure to comply with the Duties After Loss provision of the Policy, which required Plaintiff to comply with State Farm's requests for copies of records and documents. The Policy also contained a provision precluding Plaintiff from filing suit against State Farm unless she has complied with the Policy provisions:

> **Suits Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

7

Def.'s Mot., Ex. B, Policy, Section I, ¶ 6.

On December 19, 2013, Plaintiff filed this action in Genesee County Circuit Court. Defendants removed to this Court after the dismissal of Ms. Osburn, the only non-diverse Defendant. At the time of removal, State Farm had already filed motions for summary disposition in state court and sought to refile those same motions in this Court. As discussed *supra*, the Court held a status conference and informed the parties that the motions had to conform to this Court's local and federal procedural and formatting rules. The parties then agreed to conduct additional discovery for a three month period and to then refile dispositive motions.[1] Through the issuance of subpoenas during the extended discovery period in this Court, State Farm has now obtained what appears to be most of what it had been requesting since the claim was filed in 2012.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim, or cross-claim is asserted may file a motion for summary judgment "at any time until 30 days after the close of all discovery," unless a different time is set by local rule or court order. Fed. R. Civ. P. 56(b). Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "Of course, [the moving party] always bears the initial responsibility of informing the

---

[1] State Farm suggests in its motion that at that status conference, this Court ordered the parties to conduct further discovery before dispositive motions could be filed. The record of that status conference reflects no such directive. The Court indicated that the state court motions that had been "refiled" in this Court did not conform to this Court's procedural and formatting rules and then asked the parties if they desired additional discovery. Plaintiff said yes and State Farm indicated on the record that they would want to do additional discovery as well. The parties agreed on three months and the Court issued a Scheduling Order to that effect. Indeed, subsequent to the Court's issuing it Scheduling Order, the parties agreed to additional discovery and subsequently to a further extension of the Scheduling Order deadlines.

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. *See also Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact "would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted). A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the

9

nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 324. "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence. To support his or her position, he or she must present evidence on which the trier of fact could find for the plaintiff." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). In doing so, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment). "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A).

"Rule 56(e)(2) leaves no doubt about the obligation of a summary judgment opponent to make [his] case with a showing of facts that can be established by evidence that will be admissible at trial. . . . In fact, '[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.' Rule 56(e) identifies affidavits, depositions, and answers to interrogatories as appropriate items that may be used to support or oppose summary judgment." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it

should be interpreted in a way that allows it to accomplish this purpose." *Celotex*, 477 U.S. at 323-34.

### III. ANALYSIS

State Farm argues that there is no genuine issue of material fact that at the time that Plaintiff filed this action against State Farm on December 12, 2013, she had not complied with the Duties of Loss provision of the Policy, which required her to provide State Farm with the financial documentation, particularly tax returns, that they had requested multiple times. Because of this failure to comply, State Farm argues, Plaintiff was precluded under the plain language of the "Suits Against Us" provision of the Policy from filing this action, which they now move to dismiss.

Although State Farm initially concluded, based on their admittedly incomplete investigation due to Plaintiff's noncompliance, that the fire was intentional, they do not move for a summary judgment finding on this issue. In fact, they concede that such an issue inherently presents a question of fact not properly decided on summary judgment. *See* Def.'s Reply 6-7. Rather, they seek a summary judgment finding that Plaintiff failed to comply with the policy provisions requiring her to provide documentation and records regarding her financial condition prior to filing this action against State Farm and further submit that her noncompliance was sufficiently wilful and repeated that State Farm is entitled to dismissal of the claims with prejudice.

Plaintiff responds that she fully cooperated in the EUO, during which she explained that all of her records were lost in the fire. She submits that she has done the best she can to provide the requested documentation. Plaintiff argues that noticeably absent from State Farm's motion is any argument that the financial records ultimately produced point to a financial incentive for Plaintiff to have burned down her own home. And this is true - there is no such argument by State Farm

11

because they seek summary judgment based on Plaintiff's failure to produce the requested documentation during the investigation and in advance of filing suit. To prevail on this claim, State Farm need not demonstrate that the evidence ultimately and untimely produced establishes a financial incentive to set the fire. In fact, State Farm concedes that such an argument inherently presents a question of fact, not generally capable of resolution on summary judgment. It is undisputed that Plaintiff did not produce *any* financial documentation until five months after she filed this action, more than one year after her EUO, and then only produced partial records. According to State Farm, this wilful failure to cooperate and produce supporting documentation for her claim of loss, and her failure to produce records that would enable State Farm to determine a possible financial motive for setting the fire, prior to filing suit, entitles State Farm to summary judgment and a dismissal with prejudice in this case.

It is clear under Michigan law that Plaintiff's tax returns and bank records were relevant to State Farm's investigation and State Farm's request that these documents be produced was reasonable and material to its investigation. *See Vertex Int'l Mgmt., LLC v. State Farm Mutual Fire & Cas. Co.*, No. 10-12637, 2011 U.S. Dist. LEXIS 156544 (E.D. Mich. June 29, 2011) (finding that State Farm had reasonable suspicion of arson and noting that the Michigan Supreme Court has stated that "evidence of fluctuation in one's financial circumstances is relevant and admissible to demonstrate motive to commit arson on an insured property"). Plaintiff admits that she failed to produce the documents but argues that she produced what she could and therefore "substantially complied" with the provisions of the policy. Such a "substantial compliance" argument was rejected by Judge Stephen J. Murphy in *Vertex*:

> Gordon's appearance at the EUO and his production of other documentation do not

> demonstrate substantial performance under the contract. As one judge in this District has indicated, tax returns for the years surrounding the event giving rise to an insurance claim "would appear to represent a minimally necessary core of information upon which [an insurer] could take the next step in its investigation of a possible motive to commit fraud." *Musleh [v. State Farm Fire & Cas. Co.*, No. 10-11344,] 2010 US Dist. LEXIS 145095, at *9 [(E.D. Mich. Dec. 13, 2010)]. The judge concluded there that although the insureds had produced voluminous materials for the insurer's review, they were contractually obligated to produce *all* documents requested, and that substantial performance of the contract required them to cooperate with a reasonable investigation, for which the tax returns were necessary. The Court agrees. Even viewing the evidence in the light most favorable to Vertex, a jury could not reasonably find that Vertex substantially complied with the policy's requirement that it provide the documents and records material to State Farm's request.
>
> The action must be dismissed because Vertex failed to satisfy a condition precedent to bringing an action on the Policy: compliance with *all* Policy provisions.

2011 U.S. Dist. LEXIS 156544, at *15-16 (emphasis in original).

It is undisputed (1) that Plaintiff failed to produce the requested financial records and tax returns that were requested by State Farm in advance of her EUO (*see* Mot. Ex. D), (2) that she again failed to produce them *at* her EUO (*see* Henry Dep. 18-19, 22-23), (3) that she again failed to produce them in response to follow-up correspondence after her EUO (*see* Mot. Ex. F) and (4) that at the time she filed this action against State Farm, on December 12, 2013, no financial records or tax returns had been provided. As Judge Murphy observed in *Vertex*, Michigan law is clear that the financial documentation sought by State Farm, under the circumstances of this case, was material to its investigation.[2] Plaintiff's failure to timely provide the requested financial information

---

[2] The fact that some of the requested documents have now been obtained by State Farm through the issuance of subpoenas in this case does not relieve Plaintiff of her obligation under the Policy to have provided those records at the time that State Farm requested them in connection with its investigation of her claim and prior to filing her claim. The relevant time for determining compliance was the date on which Plaintiff filed this action. *See Allen v. Michigan Basic Prop. Ins. Co.*, 249 Mich. App. 66, 75 n. 8 (2008) (finding that plaintiff's participation in a court ordered deposition did not substitute for complying with EUO provision because the insurer lacked her

precluded her from filing this action under the clear terms of the "Suits Against Us" Policy provision. There is no genuine issue of material fact that Plaintiff did not comply with the "Duties of Loss" provision of the Policy before commencing this litigation. Her failure to satisfy this condition precedent to bringing suit, which clearly contravened the "Suits Against Us" provision of the Policy, entitles State Farm to dismissal of this action.[3]

Having found no genuine issue of material fact as to Plaintiff's noncompliance, the Court must determine whether the dismissal of Plaintiff's claims should be with or without prejudice. Generally, "'the failure to comply with such a condition [precedent] is not an absolute bar to recovery, but acts to suspend the right to recovery until the [condition is fulfilled].'" *Vertex*, 2011 U.S. Dist. LEXIS 156544, at *16-17 (quoting *Yeo v. State Farm Ins. Co.*, 219 Mich. App. 254, 258

---

testimony at the time it decided the claim).

[3] In response to State Farm's well supported motion, Plaintiff was obligated to respond with specific facts, supported by evidence of evidentiary quality, which demonstrate that there is a genuine issue for trial on compliance. Fed. R. Civ. P. 56(e). In response to State Farm's motion, Plaintiff provides no evidence or even argument indicating that in fact she did timely provide the documentation (the partial tax returns Plaintiff claims to have provided were provided *after* she filed her suit in state court), or that she sought more time to comply with the requests and letters or that she was precluded from doing so by some occurrence beyond her control. It is undisputed that State Farm offered to obtain these documents for Plaintiff at her EUO and to relieve her of the burden of having to do so by getting her authorization to permit State Farm to obtain the records. Plaintiff declined this offer and insisted on producing the documentation herself. *See* Henry Dep. 18, 22-23. Plaintiff declined State Farm's request despite her attorney's suggestion at the EUO that it would be easier on Plaintiff to sign the authorizations and let State Farm do the work. The very fact that State Farm apparently was able to obtain the information through subpoena practice in this Court demonstrates that the documentation *could* have been produced sooner. Had Plaintiff submitted *some* evidence, such as an Affidavit or correspondence, to refute the fact that she completely and inexcusably failed to provide State Farm with any of the requested documents before filing suit, the Court may have had some basis on which to find a question of fact on the issue of compliance. *See Smith v. American Federation Ins. Co.*, No. 234472, 2002 WL 31957545, at *8-11 (Mich. Ct. App. Dec. 27, 2002) ("the record reveals questions of fact concerning whether Smith actually provided American Federation with the documents she had in her possession and which she could acquire, as she claimed"). There is no such evidence here.

14

(1996)). Only "willful noncompliance" will justify a dismissal with prejudice:

> We believe it to be clear that, within the general framework of *Yeo*, if the noncompliance is wilful, the dismissal is to be with prejudice. On the other hand, if the noncompliance is not wilful, the implication is that the dismissal is to be without prejudice.

*Thomson v. State Farm Ins. Co.*, 232 Mich. App. 38, 45 (1988). The court in *Thomson*, addressing a question of first impression, adopted the following, and still controlling, definition of wilful noncompliance:

> [W]e conclude that "wilful noncompliance" in the context at hand refers to a failure or refusal to submit to an EUO or otherwise cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim that is part of a deliberate effort to withhold material information or a pattern of noncooperation with the insurer.

*Thomson*, 232 Mich. App. at 50 (alteration added).

The court in *Thomson* further concluded that because the EUO is typically the only method by which the insurer can attempt to establish a fraud defense, in a case in which the insured flat out refuses to attend an EUO, the burden will shift to the insured to establish that its noncompliance was not wilful. "As a practical matter, we recognize that virtually the only way by which an insurer can demonstrate that an insured has deliberately withheld material information is through the process of taking an EUO. Therefore, the burden henceforth is on the insured to demonstrate that the insured has not deliberately withheld material information. This burden will be an extraordinarily difficult one to meet." 232 Mich. App. at 51.

Although no published Michigan case has applied the *Thomson* rule outside the context of an insured's refusal to attend an EUO, (for example where, as here, the insured attends an EUO but fails to provide requested documentation), one unpublished opinion suggests that Michigan courts

15

would so expand the rule. *See Smith v. American Federation Ins. Co.*, No. 234472, 2002 WL 31957545, at *8 (Mich. Ct. App. Dec. 27, 2002) ("Though the parties have not presented us with any published case law from Michigan that extends *Thomson* beyond disputes regarding examinations under oath, we are certain that it applies to cases in which the dispute concern[s] documents requested as part of the insurer's investigation authorized in the insurance policy. We reach this conclusion because, in defining the term "wilful noncompliance," *Thomson* clearly drew within its purview cases involving an insured's failure to 'cooperate with an insurer in regard to contractual provisions allowing an insurer to investigate a claim.'") (alteration added). At least two courts in this district, however, have refused to apply the *Thomson* rule beyond the circumstances of that case, *i.e.* a flat out refusal on the part of an insured to attend an EUO. *See Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 32 F. Supp. 3d 817, 823 (E.D. Mich. 2014) (Lawson, J.) (concluding that the *Thomson* rule "only applies in a case where the record shows that the insured affirmatively refused to participate in an EUO"); *Musleh. v. State Farm Fire and Cas. Co.*, No. 10-11344, 2011 WL 34975, at *2-3 (E.D. Mich. Jan. 5, 2011) (Cleland, J.) (on reconsideration), (finding that the language in *Thomson*, regarding the "extraordinarily difficult burden" of the insured to prove that noncompliance is not wilful "is directed to the clear case of outright refusal to submit to an EUO" and declining to "expand the rule enunciated by the courts of Michigan beyond its clearly circumscribed bounds"). This Court agrees that *Thomson* should be strictly limited to the factual scenario that drove that decision, *i.e.* an insured's refusal to attend an EUO – the critical starting point for an investigation into potential fraud and wilful withholding of material information. "[W]e recognize that virtually the only way by which an insurer can demonstrate that an insured has deliberately withheld material information is through the process of taking an EUO. Therefore, the

16

burden henceforth is on the insured to demonstrate that the insured has not deliberately withheld material information. This burden will be an extraordinarily difficult one to meet." *Thomson*, 232 Mich. App. at 51. Where, as in the present case, the insured attends an EUO, giving the insurer the opportunity to drill down on the claimant's mental state relative to compliance, established Michigan law places no heightened burden on the insured to prove the absence of wilful noncompliance.

Thus, in order to conclude that State Farm is entitled to a dismissal *with prejudice*, the Court must find that there is no genuine issue of material fact that Plaintiff deliberately withheld material information or deliberately and steadfastly refused to provide requested information to the insurer. Here, as in *Vertex*, Plaintiff did sit for multiple hours and respond to questions at her EUO and did responded to every question that was asked of her. She did, however, insist on obtaining the requested financial documentation herself and rejected State Farm's offer to obtain the information on her behalf. State Farm did follow up in this case with letters to Plaintiff after her EUO expressly setting forth the documents that were still outstanding and material to their investigation. In *Vertex*, Judge Murphy found that State Farm's failure to follow up even once with the insured after his EUO to request missing information weighed against finding wilfulness:

> Furthermore, during the EUO, he agreed to produce every document requested by State Farm's examiner. EUO 144-49. State Farm never gave Gordon a deadline to produce the documents, or warned that a failure to provide them would forever bar his claim. When State Farm requested the remaining documents after Gordon's EUO, it again never warned him of the consequences of noncompliance. There is no indication that State Farm followed up even once, through written correspondence or otherwise, regarding the outstanding information. . . . Gordon perhaps could have been more diligent, but his lack of diligence in providing documents demonstrates neither a deliberate effort to withhold material information nor a pattern of non-cooperation, given his cooperation with all of State Farm's other requests during the claim investigation, including submitting to an EUO. Gordon's actions cannot support a finding of willful noncompliance. The dismissal must be without prejudice.

2011 U.S. Dist. LEXIS 156544, at *20-21. *Vertex* distinguished *Allen v. Mich. Basic Prop. Ins. Ass'n*, 249 Mich. App. 66 (2001), in which the Michigan Court of Appeals affirmed a finding of wilful noncompliance where plaintiff refused to attend any of the three EUOs the insurer scheduled and failed to provide *any* of the documents requested. 2011 U.S. Dist. LEXIS 156544, at *21 (quoting *Allen*, 249 Mich. App. at 67-68) (emphasis in original). *See also Musleh v. State Farm Fire & Cas. Co.*, 485 F. App'x 79, 81 (6th Cir. 2012) (finding that the district court did not clearly err in finding no wilful noncompliance where the insureds "failed to substantially perform under the policy because they did not provide requested tax documents, but [] partially performed by cooperating with examinations under oath and providing a number of requested documents"). Similarly, in *Vertex*, Judge Murphy found it significant, in concluding that there was no evidence of wilful noncompliance, that the insured had never definitely refused to provide the requested documents but rather voluntarily agreed to produce them but then failed to do so before State Farm denied the claim. 2011 U.S. Dist. LEXIS 156544, at *21-22.

Here, Plaintiff did attend her EUO and did cooperate in answering all of State Farm's questions and did bring with her to the EUO some documents, including sworn statements in proof of loss and personal property inventories. *See* Pl.'s Resp. Ex. B, State Farm Claim File at 10-11, items 172-82, Exhibits to EUO. Although State Farm did follow up Plaintiff's EUO with a letter on April 16, 2013, listing the documents that State Farm needed to complete its investigation and setting forth a deadline for submission, *see* Mot. Ex. F, the tone of this letter did not convey a clear sense that the claim would be denied if the information was not received by a date certain. In fact, the letter stated that the documents "should" be forwarded by Friday, May 3, 2012, but that if more time was needed Plaintiff or her attorney should contact State Farm. Mot. Ex. F, April 16, 2013

18

correspondence to Plaintiff. Certainly Plaintiff should have made contact with State Farm when she was unable to collect and produce the requested documents. Her failure to do so, however, does not indicate the type of wilful definitive refusal to cooperate that was found in *Allen*. Three months later, without further contact with Plaintiff, State Farm denied the claim and also denied the shed theft claim because it had concluded that the Policy was void on the date of the theft due to the finding of fraud and failure to cooperate in connection with the fire loss.

Plaintiff never expressed a categorical refusal to produce the documents although she did state that she had lost all of her records in the fire and it would be difficult to reproduce them. She did rebuff State Farm's request to obtain the records for her and insisted on providing them herself but she never conveyed an intent not to provide them and she fully cooperated at her EUO. Also, the tone of the questioning at the EUO did not convey a sense that Plaintiff must submit the requested documents within a certain time frame or face denial of her claims. *See* Henry Dep. at 24-25, 169. In the time frame between the April 16, 2013 letter requesting additional documentation and the August 6, 2013 denial of Plaintiff's claim, there is no evidence of any further communication from State Farm that would have put Plaintiff on notice that she faced certain denial of her claim if she did not submit all of the requested documents by a date certain.

The Court concludes that there is insufficient evidence that Plaintiff acted with a deliberate intent to withhold material information where she attended her EUO and agreed to produce the requested financial documentation, but failed to follow through on that promise before filing suit. The dismissal of this action, therefore, will be without prejudice.

## IV.   CONCLUSION

Accordingly, the Court GRANTS State Farm's motion for summary judgment because there

is no genuine issue of material fact that Plaintiff failed to comply with the Duties of Loss provision of the Policy before commencing this action. However, the dismissal will be WITHOUT PREJUDICE because there is insufficient evidence to support a finding of willful noncompliance. IT IS SO ORDERED.

                                                  Paul D. Borman
                                                  United States District Judge

Dated:    JUN 0 5 2015